Dear Director White,
¶ 0 The Attorney General has received your letter asking for an official opinion addressing, in effect, the following questions:
 1. What is the amount of the annual levy that school districts must, pursuant to 62 O.S. 431 (1991), impose to retire their outstanding bonded indebtedness?
 2. Is the method for making annual levies set forth in 62 O.S. 431 (1991) consistent with Article X, Section 28 of the Oklahoma Constitution?
¶ 1 School districts are authorized to issue bonds for the purpose of constructing, equipping, repairing and remodeling school buildings; acquiring school furniture, fixtures and equipment; acquiring and improving school sites; and purchasing transportation equipment. See, 70 O.S. 15-101 and 15-106 (1991). School districts that issue bonds are required, at or before the time the bonds are issued, to provide for the levy and collection of an annual tax. Okla. Const. Article X, Section 26;70 O.S. 15-104 (1991). The proceeds of the tax are used to create a sinking fund to pay the interest on the bonds and the principal of the bonds. Id.
 The Sinking Fund Requirement
¶ 2 The requirement that school districts create sinking funds to retire outstanding bonds is based in our state constitution. Article X, Section 28 of the Oklahoma Constitution provides as follows:
 Counties, townships, school districts, cities, and towns shall levy sufficient additional revenue to create a sinking fund to be used, first, for the payment of interest coupons as they fall due; second, for the payment of bonds as they fall due; third, for the payments of such parts of judgments as such municipality may, by law, be required to pay.
¶ 3 Since the early days of statehood, this constitutional directive has been given effect by statutory provisions requiring school districts to annually levy and collect a tax in an amount sufficient to pay current interest on any outstanding bonds and to pay all of the bonded indebtedness of such municipality coming due in the following years." See, 62 O.S. 431 (1981); 1951 Okla. Sess. Laws, tit. 62, c. 2a, 1; 1933 Okla. Sess. Laws, c.27, 1; R.L. 1910, 6771.
¶ 4 The Oklahoma Supreme Court has, on several occasions, construed Article X, Section 28 and the statutory provisions enacted to implement it. The holdings of these cases uniformly declare that, with respect to the principal component of any indebtedness, levies must be made in a manner so as to distribute the tax burden of an indebtedness as equally as possible over the term of the bond issue. See, e.g., Lewis v. Tulsa County ExciseBd., 198 P.2d 649, 651 (Okla. 1948); McMahan v. Board ofEducation of Oklahoma City, 285 P. 953, 954 (Okla. 1930). They further state that the proper amount of the annual levy to retire principal is calculated by dividing the principal amount due by the number of years until maturity of the issue so that each annual principal levy is the same. See, McMahan,285 P. at 955-56. See, also, Berryman v. Bonaparte, 11 P.2d 164, 169
(Okla. 1932).[1] As the Court pointed out in McMahan, the rationale underlying this provision of the constitution is the equitable distribution of the tax burden:
 [The] plain intent of our constitutional provisions, and the purpose thereof is to require an equal distribution as nearly as possible of the tax burden over the period of the bond term.
McMahan, 285 P. at 956.
¶ 5 It is not the case, however, that absolute equality is required. For example, the Court has implicitly recognized that this method does not result in an equal distribution of the total debt burden for serial bonds — bonds coming due in annual installments. The interest expense on serial bonds is greater in the earlier years of an issue because a greater amount of principal remains outstanding at that time; thus, the amount of the levy necessary to cover current interest and future retirement of principal will be correspondingly greater. In considering this problem, the Court examined the existing statutory framework and concluded that it found "nothing . . . that supports the contention that the equality of the amount to be raised in each fiscal year to retire the principal indebtedness may be departed from to accomplish equality of the tax burden considered as inclusive of interest." Lewis,198 P.2d at 651.
¶ 6 In addition, the Court has recognized that a certain level of flexibility is necessary so as to ensure that sufficient monies are available to make principal payments as they come due — even if this requires unequal levies. As the Court stated inLewis:
 [T]he annual accruals to the sinking fund to retire the principal must be equal unless the fund afforded on such basis is insufficient to retire any installment of the bonds at maturity, in which latter event such equality is to be disturbed to the extent necessary to provide sufficient fund therefor[.]
Lewis, 198 P.2d at 651. See, also, Texas Empire Pipe Line Co.v. Excise Board of Nowata County, 24 P.2d 988, 991 (Okla. 1933).
 The 1991 Amendments
¶ 7 In 1991, the Legislature enacted a bill which, interalia, amended 62 O.S. 431 (1991), the statute governing the method by which school districts make annual tax levies. See, 1991 Okla Sess. Laws, c. 73.[2] 62 O.S. 431 now provides, in pertinent part, as follows:
 A. It shall be the duty of the officers of each municipal corporation in the State of Oklahoma by law authorized to levy taxes to make a levy each year for a sinking fund, which shall, with cash actually on hand and lawful investments in such fund, excluding taxes in process of collection, be sufficient to pay:
 1. All the bonded indebtedness of such municipality coming due prior to April 1 of the second ensuing fiscal year for which no prior levy has been made;
 2. The interest accrued but unpaid and to accrue on all outstanding bonds of such municipality to June 30th of the ensuing fiscal year; and
 3. A sinking fund to pay any interest payable on the last and final bond maturity coming due after such June 30th but before the tax levy of the succeeding fiscal year may be made and collected.
62 O.S. 431 (1991) (Emphasis supplied).
¶ 8 A careful reading of 62 O.S. 431 discloses that while the 1991 amendments do not substantially affect the levy procedure with respect to current interest, the amendments do constitute a significant departure from the traditional method of calculating the portion of the levy attributable to principal indebtedness. Under the 1991 amendments, school districts no longer levy for a fraction of their total indebtedness. 62 O.S. 431 now requires that rather than making a levy for a portion of the entire amount of outstanding principal, school districts must instead make a levy to pay the amount of principal which will come due in the following fiscal year and during a portion of the second ensuing fiscal year.
¶ 9 Accordingly, to retire their bonded indebtedness, school districts must, pursuant to 62 O.S. 431 (1991), make an annual levy in an amount sufficient to pay all of the principal of the indebtedness of the district that will come due in following fiscal year and prior to April 1 of the second ensuing fiscal year (plus current interest and, in some cases, interest on the final maturity).[3]
¶ 10 The new method is, of course, potentially inconsistent with the statements of the Supreme Court regarding principal levies in Lewis, McMahan and similar cases. Unlike the traditional method, the new method does not require an equal split with respect to principal due, but only requires a levy for payment of principal currently due. In one respect, this potential inconsistency is of little importance because these cases were, in part, based upon statutes which have now been amended. But to the extent that the holdings of these cases embody constitutional principles, they remain relevant.
¶ 11 The potential for conflict is, however, substantially diminished by the statutory limitations placed upon the principal maturity structure of school district bonds.
 Principal Maturity Structure
¶ 12 Section 353 of Title 62 authorizes two methods of structuring the principal maturity of school district bonds. The first method set forth in § 353 provides as follows:
 [W]henever any municipal corporation or political subdivision of the State of Oklahoma shall vote any bonds or issue any funding or refunding bonds, such bonds, or combined issue of bonds referred to in 62 O.S. 354 of this title shall be made to mature in equal annual installments, beginning not less than two (2) nor more than five (5) years after their date, except that the first maturing installment may be for such sum, not more than one installment and the last maturing installment may be for such sum not more than two installments, as will complete the full issue of such bonds notwithstanding the necessity of varying the amount thereof to complete the same.
¶ 13 This method requires principal installments to be approximately equal, except that the first installment may be less than the others and the last installment may be up to twice as much. Because the principal payments come due in approximately equal amounts, school district annual levies, at least with respect to the principal component of debt, will also be approximately equal. This is, of course, consistent with the cases regarding principal levies. And while the actual amount of the total levy will not be equal — because of the amount of interest expense — this too is consistent with the earlier cases.
¶ 14 The second method of structuring principal maturities was created by the 1991 amendments and allows for so-called "level debt service." Subsection B of 62 O.S. 353 provides, in pertinent part, that:
 [W]henever any municipal corporation or political subdivision of the State of Oklahoma shall vote any bonds or issue any funding or refunding bonds, such bonds, or combined issue of bonds referred to in 62 O.S. 354 of this title may be made to mature pursuant to a schedule of annual installments which allows the bonds to be structured with level debt service payments. Such bonds shall mature beginning not less than two (2) years nor more than five (5) years after their date.
¶ 15 The subsection defines "level debt service" to mean that the "net total annual or fiscal debt service . . . must be approximately equal for every annual or fiscal period, provided that all net annual or fiscal payments must be within a dollar amount range not to exceed twice the stated denomination of the bonds." Id. Thus, the principal installments structured pursuant to this provision are not equal, but overall debt service (principal plus current interest) is relatively equal. This new method is not consistent with the specific statutory method discussed in the earlier cases, see, Lewis198 P.2d at 651; it is, however, in keeping with the underlying goal of spreading the burden of an indebtedness over the term of the bond issue.
 Constitutionality of the 1991 Amendments
¶ 16 Article X, Section 28 of the Oklahoma Constitution has long been interpreted to require levies to be "as nearly equal as possible." See, Lewis 198 P.2d at 651; Texas Empire,24 P.2d at 991. However, the 1991 amendments create the danger that this charge may not be fully realized.
¶ 17 For example, there is a potential problem in that an issue of bonds may, pursuant to 62 O.S. 353 (1991), be structured so that the initial principal installment matures on a date up to five years after the date of the issue. It is, therefore, possible that, under 62 O.S. 431, no principal levy would be made during the first few years of the term of a bond issue — a result which appears to be inconsistent with the principle that levies be spread over as many years as possible. In addition, it is likely that any issue structured under the "level debt service" provision of 62 O.S. 353 will require unequal principal levies.
¶ 18 Nevertheless, we observe that the principal maturity limitations set forth in 62 O.S. 353 generally serve to confine the amount of variation between principal installments and therefore, tend to equalize the level of the annual levies. Indeed, we point out that the Court has specifically remarked that the Serial Bond Act, including 62 O.S. 353, "distributes the tax burden between the tax years as nearly equally as is practical and possible in all of the circumstances." Lewis,198 P.2d at 652. While it is true that at the time the Court made this statement, 62 O.S. 353 did not include the "level debt service" provision, we do not believe that the inclusion of this option materially affects the constitutional analysis. If anything, the "level debt service" is more consistent with the fundamental goal of spreading the tax burden equitably than the provisions of 62 O.S. 353 discussed by the Court. Furthermore, it is appropriate to recall that the Court has repeatedly recognized the need to retain flexibility in applying the levy rule even to the extent of imposing unequal levies to ensure that sufficient amounts are available to make principal payments as they come due. Lewis, 198 P.2d at 651; Texas Empire, 24 P.2d at 991.
¶ 19 Given these considerations and taking into account the general rule that statutes are presumed to be constitutional unless there is a clear and palpable showing otherwise, see,e.g., Reherman v. Oklahoma Water Resources Board, 679 P.2d 1296
(Okla. 1984), we conclude that the method of calculating levies set forth in 62 O.S. 431 (1991) is facially consistent with Article X, Section 28 of the Oklahoma Constitution. Whether 62O.S. 431 is constitutional in its application may, however, depend upon the facts and circumstances of the particular case. In particular, there is a danger that in the event the statutes limiting principal maturity schedules are substantively changed,62 O.S. 431 may require levies which are inconsistent with the dictates of Article X, Section 28.
¶ 20 It is, therefore, the official opinion of the AttorneyGeneral that:
 1. To retire their bonded indebtedness, school districts must, pursuant to 62 O.S. 431 (1991), make an annual levy in an amount sufficient to pay all of the principal of the indebtedness of the district that will come due in the following fiscal year and prior to April 1 of the second ensuing fiscal year, plus current interest and, in some cases, interest on the final maturity.
 2. The method of calculating levies set forth in 62 O.S. 431 (1991) is facially consistent with Article X, Section 28 of the Oklahoma Constitution; however, whether this statute is constitutional in its application will depend upon the facts and circumstances of the particular case.
SUSAN BRIMER LOVING ATTORNEY GENERAL OF OKLAHOMA
K.W. JOHNSON ASSISTANT ATTORNEY GENERAL
[1] To illustrate, assume that a school district issued $100,000 of bonds, dated July 1, 1980, with a final maturity of July 1, 1990. The amount of the principal levy would be calculated by dividing $100,000, the amount of principal, by ten, the number of fiscal years until maturity. Accordingly, the district would levy $10,000 each year, or 1/10th of the total principal indebtedness. In addition to this amount, the district would also make annual levies for current interest due.
[2] Some have suggested the 62 O.S. 1991, § 399[62-399] is the provision which governs the method of making school district levies. However, reference to § 399 reveals that it applies only to bonds issued pursuant to the Municipal Funding Bonds Act of 1905, 62 O.S. 1991, §§ 391[62-391], et seq. As mentioned above, school districts presently issue bonds pursuant to 70 O.S. 1991, §§15-101[70-15-101], et seq.
[3] Because the statutory language includes the phrase "for which no prior levy has been made," it is clear that the new method of calculating levies applies only to indebtedness incurred after July 1, 1991, the effective date of the 1991 amendments. Id.